LEVY *v.* INDUSTRIAL FINANCE CORPORATION, ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 217. Argued February 24, 1928.—Decided March 5, 1928.

Section 14b (3) of the Bankruptcy Act which withholds a discharge from a bankrupt who obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person, applies where the bankrupt through his false statement obtained a loan for a corporation controlled by him and in which he was largely interested as a stockholder and creditor. P. 283.

16 F. (2d) 769, affirmed.

CERTIORARI, 274 U. S. 731, to a judgment of the Circuit Court of Appeals affirming a denial of a discharge in bankruptcy.

*Mr. S. M. Brandt* for petitioner.

*Messrs. R. Randolph Hicks, James J. Irwin, Jr.,* and *Evelyn P. Luquer* were on the brief for respondents.

MR. JUSTICE HOLMES delivered the opinion of the Court.

Levy, a bankrupt, was denied a discharge by the District Court, and the denial was affirmed on appeal by the Circuit Court of Appeals. 16 F. (2d) 769. In view of a conflict between this decision and *In re Applebaum*, 11 F. (2d) 685, a writ of certiorari was granted by this Court, 274 U. S. 731. The conflict concerns the construction of § 14b(3) of the Bankruptcy Act. (July 1, 1898, c. 541, 30 Stat. 550; June 25, 1910, c. 412, § 6, 36 Stat. 838, 839.) By that section " the judge shall . . . discharge the applicant unless he has . . . (3) obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person." The facts that raise the question are found to be as follows. The bankrupt was president of The American Home Furnishers Corporation, had the general management and control of it, had made large advances to it, and with his sister-in-law owned more than two-thirds of the stock; he obtained a loan of $1,500,000 to the corporation from the objectors and, in order to obtain it, made to them a statement in writing, known by him to be false, which very materially overstated the assets of the corporation. There is no doubt of his pecuniary interest in the result of the fraud found to have been practiced by

him, but it is said that he did not obtain money by this fraud, inasmuch as the money went to the corporation and not to him.

A man obtains his end equally when that end is to induce another to lend to his friend and when it is to bring about a loan to himself. It seems to us that it would be a natural use of ordinary English to say that he obtained the money for his friend. So, when the statute speaks simply of obtaining money, the question for whom the money must be obtained depends upon the context and the policy of the act. It would seem that so far as policy goes there is no more reason for granting a discharge to a man who has fraudulently obtained a loan to a corporation which is owned by him and in which his interests are bound up, than for granting one to a man who has got money directly for himself. *In re Dresser & Co.,* 144 Fed. Rep. 318. It is true that the narrower construction is somewhat helped by the words " for the purpose of obtaining credit from such person," which naturally would be taken to mean for the purpose of obtaining credit for himself and so would fortify the interpretation that only immediate benefit was contemplated. But we cannot think it possible that the statute should be taken to allow an escape from its words, fairly read, by the simple device of interposing an artificial personality between the bankrupt and the lender. We go no farther than the facts before us, and without intimating that our decision would be different, we express no opinion as to how it would be if the bankrupt had no substantial pecuniary interest in the borrower's obtaining the loan. The later amendment, by the Act of May 27, 1926, c. 406, § 6, 44 Stat. 662, 663, serves to limit the bars to a discharge more narrowly and by indirection to favor the defendant's position by a change of the words to " a materially false statement . . . respecting his financial con-

dition." But that statute did not govern this case and cannot be invoked for the construction of the earlier law. As to the suggestion *In re Applebaum* that the language before us may have been drawn from the original statute of false pretenses (referring we presume to 30 Geo. II, c. 24,) and that the words should be taken with the construction first given to them, it is enough to reply with the Court below that it is equally likely that they were taken from a more modern source, and were used with knowledge of the broader interpretation of later days.

*Decree affirmed.*

Mr. Justice Stone took no part in the consideration or decision of this case.